People v Gourdine (2024 NY Slip Op 51031(U))

[*1]

People v Gourdine

2024 NY Slip Op 51031(U)

Decided on August 9, 2024

Supreme Court, Kings County

Daniels-DePeyster, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 9, 2024
Supreme Court, Kings County

The People of the State of New York

against
Joshua Gourdine, Defendant.

Indictment No. 75488-23

Laurel Rebecca Dick, Esq. of The Legal Aid Society for the defendant
ADA Colby Elizabeth Levin for DA Eric Gonzalez, Kings County District Attorney's Office

Claudia Daniels-DePeyster, J.

The defendant moves for an order invalidating the People's November 22, 2023, certificate of compliance and deeming the accompanying statement of readiness illusory. The defendant also moves for an order dismissing the indictment pursuant to Criminal Procedure Law (hereinafter "CPL") § 30.30. The People oppose the motion. After carefully reviewing the parties' submissions and all relevant legal authorities, the defendant's motion is DENIED IN PART and GRANTED IN PART.
I. Applicable Law
Pursuant to CPL § 30.30(1), the applicable speedy trial period is determined by the highest offense charged in the accusatory instrument. Here, at least one of the offenses charged is a felony; thus, the People are required to state their readiness for trial within six months of the commencement of the criminal action, less any excludable time (CPL § 30.30[1][a]), in this case, 182 days. A "criminal action" commences with the filing of an accusatory instrument against a defendant in a criminal court, includes the filing of all further accusatory instruments directly derived from the initial one, and terminates with the imposition of sentence or some other final disposition in a criminal court where the last accusatory instrument was filed in the case (CPL § 1.20[16]; see CPL § 1.20[17]; People v. Cortes, 80 NY2d 201, 207 [1992]; People v. Osgood, 52 NY2d 37, 43 [1980](the filing of the felony complaint commences the criminal action); see People v. Lomax, 50 NY2d 351, 355-356 [1980](the point of commencement of an action for speedy trial purposes is the date on which the first accusatory instrument was filed)).
The defendant has the initial burden under CPL § 30.30 to demonstrate by sworn allegations of fact that there has been an inexcusable delay beyond the time outlined in the statute (People v. Santos, 68 NY2d 859, 861 [1986]). Once the defense has made that showing, the prosecution bears the burden of demonstrating its entitlement to statutory exclusions of time (People v. Brown, 28 NY3d 392 [2016]; see Santos at 861). In the post-readiness context, the onus is on the People to ensure that the record of a proceeding "is sufficiently clear to enable the [*2]court considering . . . [a] CPL 30.30 motion to make an informative decision as to whether the People should be charged" with the delay (People v. Cortes, 80 NY2d 201[1992]; see People v. Stirrup, 91 NY2d 434, 440 [1998]). The Court of Appeals has clarified that the legislature tethered the People's CPL § 245.20 discovery obligations to CPL § 30.30 speedy trial requirements (see People v. Bay, 41 NY3d 200 [2023]).
Pursuant to CPL § 245.20(1), the defendant is entitled to automatic discovery of "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction or control." Additionally, the statute goes on to enumerate specific categories of material that are discoverable (see CPL § 245.20[1][a]-[u]; see § 245.80 (delineating the People's discovery obligation, time frames for its completion and potential sanctions for late or unobtained discovery where prejudice is shown). The prosecution is required to "make diligent, good faith effort to ascertain the existence of material or information discoverable" (CPL § 245.20[2]).
Once the prosecution has provided the discovery required by CPL § 245.20(1), it must serve and file a certificate of compliance (CPL § 245.50). The filing of a "proper" certificate of compliance is a prerequisite to the prosecution being deemed ready for trial (see CPL § 245.50[3]; see People v. Lobato, 66 Misc 3d 1230[A][Crim. Ct. Kings Co. 2020]). The certificate of compliance must identify the items provided and state that "after exercising due diligence and making reasonable inquiries to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery" (CPL § 245.50[1]).
The prosecution bears "the burden of establishing that they did, in fact, exercise due diligence and made reasonable inquiries before filing the initial COC [certificate of compliance] despite a belated or missing disclosure" (Bay, supra). Diligence is determined by, among other relevant factors,
the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how apparent any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery.
(id.)
Without more, the mere statement that requests were made is insufficient to establish due diligence (see e.g., People ex rel. Fast v. Molina, 219 AD3d 1384, 1385-1386 [2d Dept, 2023]("People failed to demonstrate that the timing of the production of the minutes was beyond their control, or that they engaged in diligent efforts to produce the outstanding discovery by their trial readiness deadline"); see e.g., People v. Burwell, 260 AD2d 498 [2d Dept, 1999](due diligence not established where the record did not indicate that the prosecutor made any effort to expedite the production of grand jury minutes); see e.g. People v. Gonzalezyunga, 71 Misc 3d 1210(A)[Dist. Ct. Nassau Co. 2021](speedy trial granted where the People's conclusory statements did "not provide a scintilla of information concerning the 'vigorous activity' they undertook in this case to obtain and provide discoverable material")). Furthermore, belated disclosures and a supplemental certificate of compliance cannot compensate for the prosecution's failure to exercise due diligence before filing their initial certificate of compliance. Where due diligence is not proven, the certificate of compliance "should be deemed improper, the readiness statement stricken as illusory" (Bay at 2).
II. Certificate of Compliance and Statement of Readiness
The defense argues that the People failed to provide the following discovery before filing their certificate of compliance and contends that the omission of the stated items before filing the People's certificate of compliance demonstrates a lack of diligence and invalidates the People's certificate and statement of readiness. In response, the People contend their certificate of compliance was valid at the time it was filed, either because the items were disclosed at the time the certificate of compliance was filed, that the material does not exist, or is otherwise not discoverable.
1. Body-Worn Camera Audit Trails
The defense argues that the People's failure to provide the body-worn camera audit trails invalidated the November 22, 2023, certificate of compliance. In response, the People argue that the audit trails are not discoverable under CPL § 245. Specifically, they contend that they turned over information contained in the body-worn camera audit trails "that are discoverable, such as any notations, categories, tags, or markers applied to the video file by law enforcement officers or other users" and that "[t]he remaining data contains no factual assertions underlying the charged crimes, is not related to the subject matter of the case, and therefore is not subject to initial/automatic discovery" (People's Motion at 15).
Courts have differed concerning the discoverability of body-worn camera audit trails (compare People v. Larkin, 72 Misc 3d 663, 663 [Sup. St. Kings Co. 2021] ("absent a particularized showing that the audit trail is likely to contain information that is relevant to the crime(s) charges which cannot be ascertained from the footage itself, it is not discoverable) and People v. Williams, 73 Misc 3d 1091 [Sup. Ct. Kings Co. 2021]; with People v. Cumbe, 82 Misc 3d 1242[A] [Crim. Ct. Kings Co. 2024] ("audit trail logs contain information that is distinct from metadata and body-worn camera footage" and therefore is automatically discoverable) and People v. Rollerson, 82 Misc 3d 1212[A] [Crim. Ct. Bx. Co. 2024]). Recently, however, at least two courts have issued decisions on the matter following substantive inquiries into the audit trails and found that there were indeed discoverable (see People v. Ballard, 82 Misc 3d 403 [Crim. Ct. Queens Co. 2023]; see People v. Champion, 81 Misc 3d 292 [Crim. Ct. NY Co. 2023]).
In Ballard, the court held a hearing to clarify the definition of audit trails and ascertain how they are created, stored, and shared. At the hearing, the court took testimony from Allison Arenson, the Director of the NYPD Body Worn Camera Unit, Legal Bureau. Based upon a review of the Ballard decision, which included a detailed outline of Ms. Arenson's testimony, this Court joins other courts of similar jurisdiction and finds that the audit trails are automatically discoverable (see People v. Hall, Ind. 75024-23 [Sup. Ct. Kings Co. 2024] [Quinones, J.] (finding body-worn camera audit trails automatically discoverable); see People v. Nunez, Ind. 70981-23 [Sup. Ct. Kings Co. 2024] [Warin, J.] (same); see People v. Lyte, CR-029583-23NY [Crim. Ct. NY Co. 2024] (same); see People v. James, CR-037879-23KN [Crim. Ct. Kings Co. 2024] (same); see People v. Duran, CR-016299-23BX [Crim. Ct. Bx. Co. 2024] (same)). Specifically, this Court finds that the audit trails fall under three categories of discoverable materials:
First, the audit trails include written statements by law enforcement that would be discoverable pursuant to CPL § 245.20 [1][e] (see, e.g., People v. Torres, 79 Misc 3d 1204[A] [Crim. Ct. Queens Co. 2023] ("The audit logs are discoverable because they contain written [*3]statements from police officers about what they believed occurred during the incident"); see e.g. Rollerson, supra ("although the words audit trail do not appear in the statute, a device audit trail is nonetheless a police report subject to mandatory disclosure")).
To deem an officer's audit trail comments and categorizations as a lesser form of police writing would be arbitrary and counterintuitive when looking at the content of the writings described by the People's witness. Even if these notations are short, selected from a predetermined list, or in digital format, the subject matter communicated is directly related to the case. Types of arrests and levels of police investigation are written evidence, no matter how abbreviated (Ballard at 412).
Second, the audit trails are evidence that may impeach a testifying prosecution witness pursuant to CPL § 245.20[1][k][iv]. "Whether a testifying officer follows NYPD BWC protocol or whether they ignore their training is proper grounds for impeachment. When an officer testifies about recording an arrest or investigation, their testimony may be contradicted by the evidence in the audit trail" (Ballard at 412-413; see NYPD Patrol Guide, Use of Body-Worn Cameras, https://www.nyc.gov/assets/nypd/downloads/pdf/public_information/212-123.pdf [last visited Aug. 1, 2024]).
And finally, the audit trails are electronically stored information obtained by or on behalf of law enforcement pursuant to CPL § 245.20[1][u][i][B].
The People also argue that the "notations, tags and categorizations" have already been turned over via the metadata sheet (People's Motion at 18). However, "[t]he audit logs are PDFs that detail the police's actions on a video file throughout its entire life. They are not unlike a police report detailing a physical item's chain of custody or a log of draft DD5s. For instance, an evidence audit log would include whether the officer added, removed, or edited any of their subjective tags or notes. In contrast, the 'metadata' the People disclosed only reports those tags and other metadata in their final form. It does not include a log of the police's actions regarding the file" (Torres at 11-12). Moreover, the discovery statute does not exempt the People from providing what would otherwise be discoverable material because they deem it to be cumulative of discovery previously shared with the defense. Nor is it "the People's decision to look at two entirely different [items] and decide that they believe one contains information 'duplicative' of the other and so need not be disclosed" (People v. Ajunwa, 75 Misc 3d 1220[A] (Crim. Ct. Bx. Co. 2022]).
The People further contend that the audit trails are unrelated to the case's subject matter (see People's Motion at 20-22). In support of this argument the People rely on several pre-Ballard decisions (see People v. Smith, Ind. 1866-2019 (Sup. Ct. Kings Co. 2020) (Johnson, J.); see People v. Gill, Ind. 5410-219 (Sup. Ct. Kings Co. 2020) (Rodriguez, J.); see People v. Williams, 73 Misc 3d 1091 (Sup. Ct. Kings Co. 2021) (Morgenstern, J.)). However, the Court finds that the People's reliance on these cases is misguided as those decisions are based on misconceptions and misunderstandings of the body-worn camera and its audit trails.
Therefore, based on the foregoing, the People are directed to provide the defendant with the body-worn camera audit trails.
Additionally, the defendant argues that "the fact that this District Attorney's Office has been ordered by the court, on multiple occasions, to provide BWC audit trails is relevant to the question of whether they exercised due diligence and a good faith reliance on prior case law when they refused to provide those reports in this case" (Defense Motion at ¶ 33). The People, however, contend that "even if the court finds the material is discoverable, the People made a [*4]good faith legal interpretation of the statute" (People's Motion at 14). This Court finds that at the time the People filed their certificate of compliance, they relied in good faith on numerous published and unpublished decisions, finding that the audit trails were not discoverable and therefore declines to penalize the People in this instance for their reliance on such authorities.
2. Giglio [FN1]

The defendant contends that the People have failed to turn over complete, unredacted, underlying disciplinary records, including Internal Affairs Bureau (hereinafter "IAB") and Civilian Complaint Review Board (hereinafter "CCRB") materials and attachments, and that this failure to disclose invalidates the People's certificate of compliance (see Defense Motion at ¶ 11; see Defense Motion at 7-10; see Defense Exhibits E, F). These materials are collectively referred to as "Giglio" materials.[FN2]

The People, however, argue that CPL § 245.20(1)(k) does not require them to disclose all underlying records of police officers' personnel records to meet their initial discovery obligations (see People's Motion at 39).
Pursuant to CPL § 245.20(1)(k), the prosecution is required to disclose:
"All evidence and information, including that which is known to police or other law enforcement agencies . . . . that tends to: (i) negate the defendant's guilt as to a charged offense; (ii) reduce the degree of or mitigate the defendant's culpability as to a charged offense; (iii) support a potential defense to a charged offense; (iv) impeach the credibility of a testifying prosecution witness; (v) undermine evidence of the defendant's identity as a perpetrator of a charged offense; (vi) provide a basis for a motion to suppress evidence; or (vii) mitigate punishment."
(CPL § 245.20[1][k]).
A. Underlying Records
There is a split in the Appellate Division about whether disclosure of summary letters can satisfy the People's obligation to produce impeachment materials pursuant to CPL § 245.20(1)(k). The Fourth Department, in People v. Johnson (218 AD3d 1347 [4th Dept, 2023]), which the People urge this court to follow, found that summary letters were sufficient and that the "defendant was not automatically entitled to the entirety of a police officer's personnel file as impeaching material . . . but only to the extent that the information relate[d] to the subject matter of the case [internally quotations omitted]." The First Department, however, in the Matter of Jayson C. (200 AD3d 447 [1st Dept, 2021]), ruled that underlying police disciplinary records must be disclosed for impeachment purposes.
The Appellate Term of the Second Department addressed the disclosure of police officer disciplinary records in People v. Hamizane (80 Misc 3d 7 [App. Term 2d Dept, 2023]). In Hamizane, the court found that "with respect to every listed potential police witness, it was the People's obligation to disclose whether or not disciplinary records exist and to provide the defense with copies of any existing records" to satisfy the People's obligation under CPL § 245.20(1)(k)(iv) (Hamizane, 80 Misc 3d at 11 [emphasis added]). In making their finding, the court rejected the People's argument that their disclosure obligations were limited to information related to the case's subject matter (id. at 10-11). The court held that "[i]mpeachment evidence is not limited to what is related to the subject matter of the charges against the defendant," and the People are obligated to provide the defense with existing disciplinary records for every listed potential police witness (id. at 11[internal citations omitted]).
The Appellate Term noted in their decision in People v. Weisman (81 Misc 3d 129[A] [App. Term, 2d Dept. 9th & 10th Jud. Dists. 2023]) that the People did not violate CPL § 245.20(1)(k)(iv) for not disclosing specific IAB files, as it was "undisputed that the contents of the IAB files [were] not related to the subject matter of the case" (internal quotations omitted). The court, however, also noted that the issue had not been preserved for review and did not explain why it was included in the decision. Therefore, this Court concludes that the discussion is dicta as it was unnecessary to resolve the issue (see Matter of Doe v. Rensselaer Polytechnic Inst., 172 AD3d 1691, 1692 [2d Dept, 1979]). Accordingly, this Court is not bound by Weisman, as dicta may not serve as controlling precedent (see People v. Rosano, 69 AD2d 643 [2d Dept, 1979]).
This Court further notes that CPL § 245.20(1)(k) does not contain the word summary but clearly and unequivocally states "all evidence and information" (cf. CPL § 245.20[1][f](People are required to disclose "a written statement of the facts and opinions to which the expert [witness] is expected to testify and a summary of the grounds for each opinion")[emphasis added]; cf. CPL § 245.20[1][i](the People are required to disclose a "summary of all promises, rewards, and inducements made to . . . persons who may be called as witnesses")[emphasis added]). "If the legislature intended police department disciplinary records to be turned over by the prosecution as summaries, this language would have been used, but such language was expressly left out. In other words, the legislature intended 'all evidence and information' to mean exactly what it says" (People v. Rugerio-Rivera, 77 Misc 3d 1230(A)[Crim. Ct. NY Co. 2023](providing summaries of police disciplinary records and omitting the actual records themselves cannot satisfy the requirements of CPL § 245.20[1][k])).
Therefore, as this Court and many others have held, the People cannot satisfy their obligation under CPL § 245.20(1)(k) by providing merely a summary of any misconduct, and the People must disclose the underlying records (see e.g. People v. Rodriguez, 77 Misc 3d 23 [App. Term 1st Dept, 2022] (underlying disciplinary records must be turned over to the defendant as a part of automatic discovery); see e.g. People v. Sylvestre, 81 Misc 3d 1051 [Crim. Ct. Kings Co. 2023]; see e.g. People v. Pardo, 81 Misc 3d 858[A] [Crim. Ct. Bx. Co. 2023] (including an in-depth grammatical and historical analysis of the statute); see e.g. People v. Gehlhaus, 82 Misc 3d 864 [Dist. Ct. Nassau Co. 2024]).
The discovery statute mandates a "presumption in favor of disclosure when interpreting" its sections, and the People cannot make a unilateral "good faith" determination that misconduct files are not discoverable (CPL § 245.20[7]; see People v. Figueroa, 78 Misc 3d 1203[A] [Crim. Ct. NY Co. 2023]). If the People wish to withhold disciplinary records, they must seek a [*5]protective order and ask the court to rule on whether the People may withhold the documents (see People v. Best, 76 Misc 3d 1210[A] [Crim. Ct. Qns. Co. 2022]).
Moreover, it is not for the People to determine whether something is impeachment material, but for defense counsel (see People v. Dorado, 80 Misc 3d 829 [Crim. Ct. Kings Co. 2023](holding that all underlying disciplinary records must be disclosed to the defendant so "he can then conduct his own investigation and determine if he can use the allegations in the disciplinary records to attempt to impeach the prosecution witness")). CCRB findings of "other misconduct" have been observed by this Court in numerous instances, where, for example, an officer was given a warning for failing to activate his body-worn camera. While that specific instance may not be related to the case, the failure to activate a body-worn camera could go to the heart of a defense argument and serve as impeachment material. The defendant would, therefore, be entitled to it.
Additionally, the People indicate that they "disclosed all underlying records in the actual possession of the District Attorney's Officer, and the People requested from the NYPD any additional underlying records that may be in the NYPD's possession and will disclose those to the defendant when they become available" (see People's Motion at 43). However, the People cannot "file a Certificate of Compliance claiming they have disclosed all known discovery if they have not actually done so without the express permission of the court" (People v. Aguayza, 77 Misc 3d 482, 489 [Sup. Ct., Qns Co. 2022]).
However, CCRB and civil lawsuits are not in the People's constructive possession because they are not law enforcement agencies (see People v. Carter, 76 Misc 3d 1206 [A] [Crim. Ct. Bx. Co. 2022]). The prosecutor is not "required to obtain by subpoena duces tecum material or information which the defendant may thereby obtain" (see CPL § 245.20[2]). However, if these materials are in the People's possession, they must disclose them.
Thus, the People must disclose the underlying records to the defense if there are any NYPD substantiated or unsubstantiated allegations against any officers listed as testifying witnesses. The People cannot be deemed to have filed a valid certificate of compliance until these records are provided.
B. IAB Log Attachments
The defense also contends that the attachments referenced in previously disclosed IAB logs have not been provided (see Defense Motion at ¶ 38). The People, however, argue that the attachments are not discoverable and, in any event, inadmissible at trial (see People's Motion at 45). They further argue that requiring the People to disclose IAB attachments "would create an insurmountable burden for prosecutors to comply with their initial discovery obligations in a timely manner . . . [and] [t]he review and redaction of such files for identifying information of civilian victims and witnesses would require untold hours of work" (see People's Motion at 52).
They further argue that "attachments will often include audio and video files, which could take untold hours of work to review and redact such attachments (id. at 7; see People's Motion at 52). The Cumbe (supra), the People made the same argument that the court rejected, stating that the People were "providing hypotheticals about attachments generally" and found that the People failed to show that the attachments in that case required such laborious work from the People (id.). Even if this was the case here, no CPL provision permits the People to withhold discovery based upon the time it takes to review (see Hall, supra [finding disclosure of IAB logs is mandated]). The statute, however, does permit an automatic 30-day extension for the People to comply with their discovery obligations "[w]hen the discoverable materials . . . are [*6]exceptionally voluminous or, despite diligent, good faith efforts, are otherwise not in the actual possession of the prosecution" (CPL § 245.10[1][a]).
Here, the People failed to outline or detail any efforts made to obtain the attachments prior to filing their certificate of compliance and "[a]bsent any indication that the People ever sought the attachments, the court cannot find due diligence" (People v. Silva-Torres, 81 Misc 3d 1121, 1130 [Crim. Ct. NY Co. 2023]).
C. Redactions to IAB Logs and CCRB Summaries
The defense contends that "IAB reports and many disclosure summaries are redacted without approval from the court, even to the point of blacking out basic listings of complaints" (see Defense Motion at ¶ 37; see Defense Exhibit J — Officer History Disclosed for PO Martinez).
It is undisputed that the People disclosed IAB materials with redactions. CPL § 245.20[6] permits social security and tax numbers redactions. Public Officers Law § 89(2-b) permits redactions to medical history, home addresses, telephone numbers, email addresses, social security numbers, and use of certain employee assistance services. Public Officers Law § 89(2-c) permits redactions to technical infractions, which is defined as a minor rule violation solely related to administrative departmental rules that "(a) do not involve interactions with members of the public, (b) are not of public concern, and (c) are not otherwise connected to such person's investigative, enforcement, training, supervision, or reporting responsibilities." Further, CPL § 245.70[1] states that "upon showing of good cause by either party, the court may at any time order that discovery or inspection of any kind of material or information under this article be denied, restricted, conditioned or deferred." This is to say that the parties must seek guidance from the court to shield discovery unless it meets the specific redactions enumerated in the statutes discussed supra.
In this case, the Court has only been provided one document of redactions to review. The defense provided that document (see Defense Exhibit J). The People do not address the redactions made or purport that they received the documents already redacted. Therefore, this Court finds that the People failed to establish an effort of due diligence to comport with their duties. Moreover, the People are directed to review the IAB logs and CCRB summaries for proper redactions consistent with the applicable statutes and expeditiously provide those to the defense.
3. NYPD's Domain Awareness System ("DAS") Reports
The NYPD's DAS is a central platform the NYPD uses to conduct searches across a network of databases using different search parameters, such as an address or a name. It then retrieves any data relevant to the query stored within its database, irrespective of its connection to the ongoing case. Consequently, search outcomes for a name or address may encompass entirely unrelated records like 911 calls, Domestic Incident Reports, aided reports, lists of 311 complaints, as well as information stemming from other arrests and investigations linked to the individual or location in question (NYPD Shield, Counterterrorism Initiatives, https://www.nypdshield.org/initiatives/ [last visited Aug. 5, 2024]).
The defense claims that the People's failure to provide a specific DAS report they requested invalidates their certificate of compliance. The defendant argues that this particular DAS report is discoverable as "the defense has good reason to believe that a police database [*7]entry on the defendant 'tends to . . . provide a basis for a motion to suppress evidence'" (Defense Motion at ¶ 24; see Defense Exhibit O; see CPL § 245.20[1]). Specifically, they argue that:
[t]he DAS Entity Report run by Det. Esposito is very likely the same or similar content to the result of the search run by the officers who stopped Mr. Gourdine. It was only after the arresting officers ran a search of Mr. Gourdine on Officer Biscardi's cellphone that they demanded that he stand up and [they] frisked him. Prior to retrieving that information, after Mr. Gourdine provided his photo ID, the officers had told him that he was going to receive a summons for being in the park after hours. Therefore, the information in that search belies the People's contention that the officers frisked Mr. Gourdine based on an observation of a bulge rather than as a result of information that they deduced about his criminal record from that search" (Defense Reply Motion at ¶ 34).
However, the People argue that DAS reports are not subject to automatic disclosure as they contain irrelevant and duplicative information (see People's Motion at 28). They argue that the DAS report is mainly unrelated to the subject matter of the case. Specifically, they argue that "the mere fact that a detective learned some type of information as a result of a nascent investigation does not render otherwise irrelevant, and thus completely unrelated, information thereby relevant" (see People's Motion at 32-33).
In support of their argument, the People cite multiple cases that have found that DAS reports are not discoverable. The Court finds these cases to be inapposite as they address more generalized search results that do not necessarily relate to the subject matter of the case (see e.g. People v. Perry, Ind. 8700/2018 [Sup. Ct. Kings Co. 2020] (following an in-camera inspection of the "DAS import," the court held that the documents were not automatically discoverable as the DAS report had "nothing to do with this case, the case that your[r] client is being prosecuted for" was not per se discoverable (see People's Exhibit 16)); see e.g. People v. Garcia, 2021 NY Slip OP 50791[U] [Sup. Ct. King Co. 2021 (addressing DAS reports on 911 calls made from the complainant's number on unrelated cases); see e.g. People v. Lawrence, Ind. 2485/2019 [Sup. Ct. Kings Co. 2022]; see e.g. People v. Nathanial, Ind. 2485/2019 [Sup. Ct. Kings Co. 2022] [D'Emic, J.] (addressing the DAS search produced on the complainant)). For example, People v. Gill (Ind. 5410/19 [Sup. Ct. Kings Co. 2020] [Rodriguez, J.]) addresses DAS Reports that include "social media accounts by the victim; prior incidents where the victim, or the civilians spoke to the police on this case, called 911 and were aided by the police; unrelated 911 calls from dates different from the date of defendant's crime and involving uninvolved individuals seeking personal help . . . " Here, however, the DAS report requested relates directly to the defendant himself.
The People's arguments do not persuade the Court. While the People's contention of irrelevancy is true in some cases, in this case, the DAS report was generated and attached to the DD5s and used as a part of the investigation in the defendant's case (see e.g. People v. Janbi, CR-039040-23KN [Crim. Ct. King Co. 2024]). "Since the DD5 related to the subject matter of the case, it flows that an attachment to the DD5 relates as well" (People v. Saintlouis, CR-026800-23KN [Crim. Ct. Kings Co. 2024]).
"[T]he Court is disinclined to hold that materials in a police investigative file are not related 'to the subject matter of the case' simply because, in the People's estimation, they appear to be of minimal value, particularly given the statutory presumption favoring disclosure" (People [*8]v. Lustig, 68 Misc 3d 234, 239 [Sup. Ct. Queens Co. 2020]). It is not for the People to determine what is discoverable (see People v. Cartagena, 76 Misc 3d 1214[A] [Crim. Ct. NY Co. 2022]).
Moreover, the Court cannot overlook the fact that the People knowingly withheld the DAS report even when the defendant raised the issue to the People on more than one occasion (see Defense Motion at ¶ 36; see Defense Exhibit D; see People's Exhibit 7). In their papers, the People admit that some DAS results may be discoverable under CPL § 245.20(1) (see People's Motion at 32). As such, "[t]he People cannot categorically refuse to disclose it" (People v. Amir, 76 Misc 3d 1209[A] [Crim. Ct. Bx. Co. 2022]).
Therefore, this Court finds that this specific DAS report related to the case's subject matter is automatically discoverable and should have been provided to defense counsel. This Court further finds that the People failed to act diligently regarding this document.
4. NYPD Non-Conformity Reports for OCME Analyst
CPL § 245.20(1)(j) requires the disclosure of all non-conformities in scientific casework, which the defense asserts the People have failed to provide. In response, the People's papers assert several confusing, if not wholly contradictory, statements. For example, the People indicate that any non-conformity in the instant matter would be contained in the certified OCME file (see People's Motion at 55-56). While they assert that the OCME file was disclosed on November 22, 2023, they do not clarify if the non-conformity was contained in the OCME file in this case. Moreover, despite their claim that the OCME file that was disclosed would contain the non-conformity, the People also assert that "[p]ursuant to OCME protocol, the OCME will not provide the People with non-conformities of the testifying expert witness until a trial date has been scheduled by the court," which one has not been scheduled here (People's Motion at 56). The People also state that they "will disclose Giglio information expeditiously as soon as the identity of the testifying OCME witness is known," yet on the very next page, they state that the Notice and Disclosure Form served on November 22, 2023, contained the name of the testifying witness (see People's Motion at 55-56). The Court cannot reconcile these contradictory positions and finds that the People have failed to demonstrate that they properly and timely disclosed the discovery or acted diligently as it relates to these documents.
5. Electronic Raw Data for DNA Analysis by OCME
The Office of the Chief Medical Examiner (hereinafter "OCME") is an independent, non-law enforcement agency that is not within the direction or control of the Kings County District Attorney's Office, and the People are only required to make "a diligent, good faith effort" to ascertain the existence of discoverable material and to cause such material to be made available where the material is "within the prosecutor's possession, custody or control" (CPL 245.20[2]). Therefore, the People are not required to provide Electronic Raw Data maintained by the OCME unless and until it is in their possession.
6. Stop Report Rejected Drafts
The defense contends that the People's certificate of compliance is invalidated by their failure to disclose Stop Report Drafts. On December 15, 2023, defense counsel notified the assigned Assistant District Attorney via email that "the Stop Report disclosed was not the original draft and that . . . there had been three prior drafts which had been returned to the arresting officer for revision" (Defense Motion at ¶ 5; see Defense Exhibit C; see People's [*9]Exhibit 5).
On January 25, 2024, defense counsel raised the issue on the record and the Court issued a hearing pursuant to People v. Banch (80 NY2d 610 [1992]), to determine whether the draft had been destroyed.
On February 2, 2024, the parties participated in a virtual case conference with Court Attorney Shirin Zarabi. During the call, the parties discussed the rejected Stop Reports, and the People explained the efforts they had made thus far, which included reaching out to the arresting officer, the supervising sergeant, the NYPD IT department, and "speaking with the vice president of Sound Thinking (the company who created the program used to draft the Stop Report) to try and retrieve the rejected reports" (People's Motion at ¶ 20; see People's Exhibit 6; see Defense Motion at ¶ 5; see Defense Exhibit D). On May 9, 2024, ADA Levin disclosed to the defense and the Court three prior drafts of the Stop Report (see Defense Motion at ¶ 9; see People's Exhibit 12).
Court does not believe that these drafts would have been readily apparent to the People and further finds that they did act diligently to obtain them once it was brought to their attention (see Bay, supra) (factors in assessing due diligence include "how obvious any missing material would likely have been to a prosecutor exercising due diligence")). Therefore, the Court will not deem this a basis to invalidate the certificate of compliance.
7. Activity Logs
The defense contends that they were provided either incomplete or incorrect activity logs for several officers. Though the People do not directly address the logs in their motion papers, People's Exhibit 9 makes clear that the People shared the "correct" or "finalized version[s]" of the activity logs with the defense on or about February 29, 2024, several months after the filing of their certificate of compliance (see People's Exhibit 9). The People fail to adequately explain the basis for this belated disclosure, and this Court finds that the People have failed to comply with their statutory obligation as it relates to these documents.
8. NYPD Non-Confirmatory Reports for Ballistics Expert
Regarding the NYPD non-conformity reports for the ballistics expert, the People assert that these were already shared with defense counsel on November 22, 2023, as part of their certificate of compliance (see People's Motion at 54-55).
9. Remaining Items of Discovery Purported to be Missing
The defense submits that the People's certificate of compliance is also invalidated by the People's failure to disclose the command entry logs, the holding pen roster, and roll call logs. In response, the People assert that these items are not discoverable under CPL § 245. However, the People fail to adequately explain the basis for this position and provide no case law supporting their argument. As to the remaining items of discovery, the defense raised in their papers,[FN3]
the [*10]People failed to address them at all. Therefore, this Court finds that the People have failed to comply with their statutory obligation related to these documents.
Accordingly, for the reasons set forth above, the defendant's motion to invalidate the People's November 22, 2023, certificate of compliance is granted.
III. CPL 30.30(1)(a): Time Charged to the People
September 4, 2023 — October 30, 2023
On September 4, 2023, the defendant was arraigned on a felony complaint charging him with Criminal Possession of a Weapon in the Second Degree (PL § 265.03) and other related offenses. The case was adjourned for grand jury action on September 8, 2023. An adjournment for grand jury action is chargeable to the People (see People v. Anderson, 252 AD2d 399 [1st Dept, 1998]).
On September 8, 2023, the grand jury voted to indict the defendant.
On September 27, 2023, the People filed and served an initial notice and disclosure form along with various pieces of discovery (see People's Exhibit 1).
The defendant was arraigned on the instant indictment on September 29, 2023. The period between indictment and supreme court arraignment is chargeable to the People (see People v. Correa, 77 NY2d 930 [1991]; see People v. Lisene, 201 AD3d 738 [2d Dept, 2022]). The defense did not request review of the grand jury minutes, and the case was adjourned to November 9, 2023, for the People's certificate of compliance.
56 DAYS CHARGED TOTAL = 56
October 30, 2023 — February 13, 2024
In the interim, on October 30, 3023, the People filed a motion to compel a buccal swab (see People's Exhibit 2). This served as a basis to toll the speedy trial clock (see CPL § 30.30[4][a] (the period during which the Court was considering a motion is excluded)).
On November 8, 2023, defense counsel filed an omnibus motion requesting a review of the grand jury minutes (see People's Exhibit 3).
On November 9, 2023, the case was adjourned to December 19, 2023, for the People's certificate of compliance and decisions on the motion to compel and the omnibus motion.
On November 17, 2023, the People filed their opposition to the defense's omnibus motion.
On November 22, 2023, the People filed their certificate of compliance (see Defense Exhibit A; see People's Exhibit 4). However, as discussed supra, the People's certificate of compliance, and thus their statement of readiness, was invalid at the time it was filed, and therefore, such filing did not serve to toll the speedy trial clock.
On December 19, 2023, the Court decided on the motion to compel and granted the swab. The case was adjourned to January 25, 2024, for a decision on the grand jury minutes, swab update, defense certificate of compliance, and any challenges to the People's certificate of compliance.
On January 25, 2024, the case was adjourned to March 7, 2024, for a decision on the grand jury minutes.
On February 7, 2024, defense counsel notified the People via a letter of additional insufficiencies in discovery (see Defense Exhibits E &F; see People's Exhibit 8).
The court issued its decision on February 13, 2024, regarding the sufficiency of the grand jury minutes.
This entire period is excludable as delay resulting from motion practice (see CPL § 30.30[4][a]; see also People v. Lopez, 49 AD3d 899 [2d Dept, 2008] (court properly excluded from the time chargeable to the People the period in which the court was reviewing the grand jury minutes); see also People v. Cain, 291 AD2d 326 [1st Dept, 2002] (once a decision is rendered off calendar, the People are entitled to exclusion of the remainder of the adjournment to prepare for trial)).
0 DAYS CHARGED TOTAL = 56
March 7, 2024 — Present
On February 29, 2024, the People responded to the defense counsel's discovery letter and filed additional discovery along with a supplemental certificate of compliance (see Defense Exhibit B; see People's Exhibit 9). However, as discussed supra, various items of discovery have yet to be filed, and the Court finds that this supplemental certificate of compliance was also invalid.
On March 7, 2024, the case was adjourned to April 10, 2024, for a Banch hearing.
On April 10, 2024, the People were not ready for the hearing and requested three weeks. The case was adjourned to May 6, 2024.
On May 3, 2024, the People notified the Court and defense counsel that they would not be ready for the May 6, 2024, hearing date. The case was adjourned to May 13, 2024.
On May 13, 2024, the Court denied the defendant's request for a Banch hearing based on the People's disclosure of the draft Stop Reports. The case was adjourned to June 20, 2024, for a readiness inquiry.
On June 19, 2024, defense counsel emailed the People requesting body-worn camera audit trails (see People's Exhibit 14).
On June 20, 2024, the defense orally challenged the People's certificate of compliance, arguing that they failed to comply with their discovery obligations under CPL § 245.20(1).
On June 21, 2024, defense counsel emailed the People to address an apparent Giglio issue (see People's Exhibit 15).
Defense counsel filed the instant motion on June 26, 2024 (see CPL § 30.30[4][a]).
The entire period leading up to the filing of said motion is chargeable to the People as they had failed to file a valid certificate of compliance.
111 DAYS CHARGED TOTAL = 167
Therefore, this Court finds that the People have not exceeded the speedy trial time allotted to prosecute this matter. The defendant's motion to dismiss pursuant to CPL § 30.30 is DENIED.
However, pursuant to CPL § 30.30(2)(a), "where a defendant has been committed to the custody of the sheriff in a criminal action he must be released on bail or on his own recognizance . . . if the people are not ready for trial in that criminal action within ninety days from the commencement of his commitment . . . wherein the defendant is accused of . . . a felony." Therefore, the defendant is released on his own recognizance.
CONCLUSION
The foregoing constitutes the Decision and Order of the Court.
Dated: August 9, 2024
Brooklyn, New York
Hon. Claudia Daniels-DePeyster, A.J.S.C

Footnotes

Footnote 1:The Court notes that in reviewing the parties' papers, the Court Attorney, Shirin Zarabi, emailed the parties to request clarification as to the Giglio issues presented. Both parties were allowed to respond.

Footnote 2:In Giglio v. United States (405 US 150 [1972]), the Supreme Court held that the government must disclose evidence that may be used to impeach one of its witnesses. In this context, "Giglio" disclosures refer to information related to police misconduct (see People v. Figueroa, 76 Misc 3d 888 [Crim. Ct. Bx. Co. 2022]).

Footnote 3:A portion of grand jury minutes where ADA reads in ballistics and prior conviction; criminal incident DD5; two i-cards referenced in DD5s; specific designation of which body-worn camera the ADA intends to use; photo of writings on evidence collection envelopes and labels; evidence transmittal report; and requests for commendation or recognition made by members of service based on this arrest or investigation.